**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **VICKIE L. KUYKENDALL,** ) | |
| ) | |
| Plaintiff, ) | Case No. CV 06-2313 AJW |
| ) | |
| v. ) | **MEMORANDUM OF DECISION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for Supplemental Security Income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on December 17, 2003 alleging disability due to a heart condition, arthritis, a pinched nerve in the left arm, headaches, swelling of the hands and ankles, gallstones and kidney stones, hepatitis "C," drug addiction in remission, and anxiety. [JS 2; Administrative Record ("AR") 18, 60, 74]. That claim was denied initially and on reconsideration, and an administrative hearing was conducted on June 23 2005 before Administrative Law Judge James D. Goodman (the "ALJ"). [JS 2; AR 502-523]. In a written hearing decision dated July 29, 2005, the ALJ found that plaintiff had severe

impairments consisting of coronary artery disease, status post angioplasty and stent placement, and mild osteoarthritis of the lumbar spine. [AR 23]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform medium work with occasional bending. [AR 23]. The ALJ determined that plaintiff's RFC did not preclude her from performing her past relevant work as a delivery truck driver. [AR 23]. Accordingly, the ALJ concluded that plaintiff was not disabled. [JS 2-3; AR 23]. The Appeals Council denied plaintiff's request for review of that decision. [AR 5-8].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Mental impairments**

Plaintiff contends that the ALJ erred in finding that she did not have a severe mental impairment. [See JS 1-8].

A medically-determinable physical or mental impairment is severe if it "significantly limits" the individual's ability to perform "basic work activities," including mental abilities such as understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). An impairment is not severe if it amounts to a slight abnormality having no more than a minimal effect on the individual's

ability to work. See 20 C.F.R. §§ 404.1521(a)&(b), 416.921(a)&(b); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006). Standing alone, the diagnosis of an impairment does not establish that the impairment is either severe or disabling. See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (stating that the existence of an emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity"); Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (noting that although step two "requires a 'de minimis' showing of impairment," a claimant "must show more than the mere presence of a condition or ailment") (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

Plaintiff asserts that her prior medical records show a diagnosis of stress disorder with anxiety in April 2001, well before December 17, 2003, the date she filed her SSI benefits and the date used by the ALJ as her onset date. In progress notes for the period from November 2000 through September 2003, plaintiff's treating physician, Dr. Pilpa, repeatedly described plaintiff as a "heavy smoker." [AR 98-125]. He counseled plaintiff to quit smoking and concomitantly prescribed Wellbutrin, an antidepressant which can reduce nicotine craving and is used as an adjunct therapy for smoking cessation. In November 2000, plaintiff said she had not been smoking and complained of feeling "stressed out" and nervous, having palpitations, poor sleep, and crying spells. [AR 118]. Dr. Pilpa diagnosed stress disorder with anxiety, for which he prescribed Xanax. [See AR 98-118]. Dr. Pilpa characterized plaintiff's medication compliance as poor, and she apparently continued to smoke after he advised her to quit; it is not clear whether she eventually stopped smoking altogether. [AR 96, 110-119, 122]. In January 2001, her anxiety was noted to be improving with Xanax. [AR 115]. Dr. Pilpa prescribed Xanax at least through September 2003. [See AR 98-118]. In July and August 2003, just a few months before plaintiff filed her benefits application, Dr. Pilpa treated her for infected leg ulcers secondary to intravenous heroin use. [AR 99, 102].

In March 2004, plaintiff sought treatment at Los Angeles County-USC Medical Center ("County USC") and was prescribed Paxil for depression.[1] [AR 157]. In January 2005, she presented to a Los Angeles County Department of Mental Health clinic ("County Mental Health"), complaining of racing thoughts, inability to sleep, and depression. Among other things, she reported a 30-year history of heroin addiction in

---

[1]  Plaintiff asserts that she received mental health treatment in April 2004. [JS 4]. The document plaintiff cites, however—a progress note dated April 13, 2004—was incorrectly dated. The date subsequently was corrected to April 13, 2005. [Compare AR 243 with AR 402].

3

remission for six months and a history of incarceration. [AR 249-255]. She was referred for an emergency medical consultation and was diagnosed with depression, anxiety, mood swings, and a history of alcohol and drug abuse. She was prescribed Seroquel to stabilize her mood. [AR 250].

Plaintiff underwent an initial psychiatric evaluation at County Mental Health on March 11, 2005. She reported six months of sobriety after two years of methadone treatment. She complained of nervousness, feeling anxious, mood swings and irritability. She was diagnosed with depression, anxiety disorder and polysubstance abuse, and she was continued on Seroquel. [AR 18, 403-404]. The treating psychiatrist gave plaintiff a Global Assessment of Function ("GAF") score of 60, denoting a moderate impairment or moderate symptoms.[2] [AR 403-404]. Plaintiff attended sessions of a dual diagnosis group and relapse prevention group in March 2005. [AR 246-248]. Medication support notes from April and May 2005 indicate that Seroquel was "partially" effective in controlling her symptoms. She said she was attending meetings three times a week and denied substance abuse. [AR 400-401]. Treatment records submitted to the Appeals Council indicate that plaintiff's anxiety was "stable" on Seroquel in July 2005. [AR 407-501].

During the June 2005 hearing, plaintiff testified that she had been sober for three years and was heavily involved in Narcotics Anonymous. Asked to describe the problems that prevented her from working, plaintiff testified that she could not bend her neck, had a constant dull headache that made her

---

[2] The GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient. The GAF rating is in the lower of two decile ranges if either the symptom severity or the level of functioning falls within that range (even if the other component does not). A GAF score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. A score in the range of 61 through 70 denotes some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002); see also Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 598 n.1 (9th Cir. 1999); Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996), rev'd on other grounds,143 F.3d 1240, 1245 (9th Cir. 1998); see also Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

"snappy" around people, had swelling her hands and fingers when she used them a lot, and often lacked energy, a symptom she attributed to hepatitis C. [AR 513-517]. Plaintiff also testified that she was being treated for anxiety at County Mental Health. She said that "I get really stressed out and my head starts hurting and . . . I'm just real snappy. It's hard for me to be around people. . . . I can't keep my mind on anything because I'm stressed out about whatever is going on." [AR 518]. She testified that she had been going to County Mental Health for about 8 months and had been there about 8 times, and that she had been placed on Seroquel because her previous medication, Xanax, was a narcotic and made it hard for her to sleep. [AR 518-520].

Based on the treatment notes from County Mental Health, the ALJ determined that plaintiff had responded to medication and did not have any severe mental impairment related to her anxiety, depression, or what he acknowledged was her "long history of heroin, marijuana and alcohol abuse dating back to age 15." [AR 19, 21]. As plaintiff correctly points out, the ALJ did not assess the severity of plaintiff's mental impairment using the "special technique," also known as the psychiatric review technique, required by the Commissioner's regulations. See 20 C.F.R. § 416.920a. Those regulations state that "when we evaluate the severity of mental impairments for adults . . ., we must follow a special technique at each level in the administrative review process." 20 C.F.R. § 416.920a(a). Under the special technique, the ALJ first evaluates the "pertinent symptoms, signs, and laboratory findings to determine whether" a medically-determinable mental impairment exists. 20 C.F.R. § 416.920a(b)(1). If so, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)," make findings in accordance with 20 C.F.R. § 416.920a(e), and "rate the degree of functional limitation resulting from the impairment(s)" in "four broad functional areas" (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) using a prescribed four- or five-point scale. 20 C.F.R. § 416.920a(b)&(c). The point scale ratings in those functional areas determine severity, unless there is other evidence showing more than a minimal limitation in the ability to perform basic work activities. 20 C.F.R. § 416.920a(d)(1).

The ALJ did not indicate anywhere in his decision that he was applying the psychiatric review technique, and he did not document the required findings in his decision. See 20 C.F.R. § 416.920a(e)("At the administrative law judge hearing and Appeals Council levels . . ., we will document application of the

technique in the decision."). This omission was legal error.[3]

The ALJ's error might have been harmless if he had cited to the opinion of a state agency physician or other physician who applied the technique and found no severe mental impairment, but he did not (and in any event the record in this case appears not to include such an opinion). Because the ALJ found that plaintiff had a medically-determinable mental impairment, and because plaintiff has a colorable claim of a mental impairment, the ALJ committed reversible legal error.

**Remand for further administrative proceedings or award of benefits**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns

---

[3] Formerly, the Commissioner's regulations required the ALJ to document application of the psychiatric review technique on a special evaluation form which had to be completed and appended to the decision. See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000)(holding that where there is a "colorable claim of mental impairment," the failure to complete the evaluation form required by 20 C.F.R. § 404.1520a and append it to the decision requires remand). The regulations have since been amended to allow the ALJ to document application of the technique in the narrative portion of the hearing decision. See 71 Fed.Reg. 16424, 16444, 16459 (March 31, 2006)(amending 20 C.F.R. § 404.1520a and 20 C.F.R § 416.920a).

upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

Because it is not clear from the record that the ALJ would be required to find plaintiff disabled if he properly evaluated the evidence and issued a decision correctly applying the relevant legal standards, the appropriate remedy here is a remand for further administrative proceedings and a new hearing decision. On remand, the ALJ shall evaluate all of the evidence in the record, including the evidence submitted to the Appeals Council in this case and any new evidence submitted by plaintiff. Because some of plaintiff's alleged impairments are, or may be, progressive in nature, the ALJ should consider whether the evidence of record indicates that plaintiff's functional capacity may have diminished during the period under adjudication.[4]

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: July 2, 2007

/ s /

ANDREW J. WISTRICH
United States Magistrate Judge

---

[4] This disposition obviates the need to address plaintiff's remaining contentions. The court notes that even if plaintiff's contentions regarding the ALJ's credibility assessment and RFC finding independently warrant reversal, the proper remedy would be a remand for further proceedings, not a remand for the award of benefits, because the court has discretion not to credit improperly rejected testimony, and because the issue of whether plaintiff can perform alternative work remains to be resolved. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)(holding that a court has discretion not to require the "crediting as true" of testimony rejected for insufficient reasons); Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003)(applying the Smolen/Harman remand test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," whether the ALJ "must credit her testimony as true,"and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).